# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOEL WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-16-439-HE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## **REPORT AND RECOMMENDATION**

Joel White (Plaintiff) brings this action for judicial review of the Defendant Acting Commissioner of Social Security's (Commissioner) final decision that he was not "disabled" under the terms of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). Chief United States District Judge Joe Heaton has referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3), and Fed. R. Civ. P. 72(b). Doc. 11.

After a careful review of the record, the parties' briefs, and the relevant authority, the undersigned recommends the entry of judgment affirming the Commissioner's final decision. *See* 42 U.S.C. § 405(g).

I.    **Administrative determination.**

　　A.    **Disability standard.**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

　　B.    **Burden of proof.**

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

**C. Relevant findings.**

**1. Administrative Law Judge (ALJ) findings.**

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis and concluded Plaintiff had not met his burden of proof. AR 23-31; *see* 20 C.F.R. §§ 404.1520(a)(2), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). Specifically, the ALJ found Plaintiff:

(1) was severely impaired by retinal macular dystrophy, chronic pain to his hips, status post hernia repairs, and a history of alcohol abuse, and, in addition, had nonsevere impairments involving the feet;

(2) did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(3) had the residual functional capacity[1] (RFC) for light work that did not require him to read fine print or to perform detailed assembly requiring fine finger-dexterity;

(4) was able to perform his past relevant work as a remnant sorter;

(5) alternatively, was able to perform jobs existing in the national economy; and so,

(6) had not been under a disability, as defined in the Social Security Act, from January 18, 2010—his alleged onset of disability date—through May 6, 2014, the date of the ALJ's decision.

---

[1] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

AR 23-31.

        **2.     Appeals Council action.**

The Social Security Administration's (SSA) Appeals Council found no reason to review that decision, so the ALJ's decision is the Commissioner's final decision in this case. *Id.* at 4-9; *see Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II.    Judicial review of the Commissioner's final decision.

        **A.     Review standard.**

The court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (citation omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

## B. Issues for judicial review.

Plaintiff maintains "[t]he ALJ should have ordered a consultative exam," Doc. 13, at 4, and further claims "[t]he RFC is wrong." *Id.* at 15.

## C. Analysis.

### 1. Whether the ALJ erred by not ordering a consultative vision examination.

#### a. The ALJ's vision findings.

At the conclusion of his administrative hearing, Plaintiff questioned "[w]hy Social Security never sent me to the eye doctor for an eye exam." AR 74. He testified his last eye examination had been in 2005 and complained, "My eyes have gotten a lot worse since I had the exam." *Id.* at 74-75. The ALJ advised he would review the results of the 2005 examination and "if it looks like it's inconclusive," would consider ordering another examination. *Id.* at 75. In his subsequent hearing decision, the ALJ explicated the evidence of record relevant to Plaintiff's vision, beginning with the medical evidence and the results of that referenced examination:

> Due to retinal macular dystrophy, the claimant has decreased vision. He utilizes reading glasses in conjunction with a magnifying glass for reading. Upon eye examination with the low vision rehabilitation physician at the Dean McGee Eye Institute, Rebecca Morgan, M.D., on May 8, 2006, [Plaintiff] had visual acuity without correction of 20/80 in the right eye and 20/76 in the left eye. Peripheral field testing by confrontation method showed full and normal results in each eye and contrast sensitivity testing showed no reduction. A small scotoma was noted in the

center of each fovea. [Plaintiff] was advised on occupational therapeutic intervention, including scotoma avoidance and eccentric fixation techniques that could be used to improve his vision, but he was interested in discussing the options and had no interest in seeing an occupational therapist. [Plaintiff] demonstrated improved functional vision with the use of high plus aids and he was advised on various adaptations available, but [Plaintiff] terminated the appointment at that point (Exhibit IF).

. . . .

In follow up at Variety Care on September 22, 2011, [Plaintiff] . . . advised that he had a blind spot in both eyes and that he was told at Dean A. McGee Clinic that nothing could be done to help his vision . . . .

On November 29, 2011, [Plaintiff] was examined by the consultative physician, Dennis Brennan, D.O. . . . . Upon examination, Dr. Bennan found [Plaintiff] . . . had uncorrected visual acuity of 20/70 in each eye . . . .

*Id.* at 25-26.

The ALJ also documented Plaintiff's administrative hearing testimony bearing on his decreased vision:

[Plaintiff] testified that he is not able to work on a full time basis due to his eye disease and that he has a blind sight in the center of his direct vision that keeps getting bigger. [Plaintiff] testified that he still has peripheral vision and can see at the sides. [Plaintiff] testified he can watch television, but he cannot make out all the faces in the center of the screen when he looks straight at the screen. [Plaintiff] testified that he can read a newspaper with the use of a magnifying glass. [Plaintiff] testified he is no longer able to do his electrical work because of his eyesight and that running a forklift is out of the question. [Plaintiff] testified he is able to work around his blind spot to do daily living activities, such as getting dressed, shaving, showering, and laundry. [Plaintiff] testified he has not driven since 2009 and that his eyes are too bad

6

> to drive currently. [Plaintiff] testified it is easier to hold things up close to read and that he carries a regular magnifying glass to make it easier.
>
> [Plaintiff] testified that he currently lives at the Salvation Army Rehabilitation Center and that he does work therapy there, sitting down to sort hangers. [Plaintiff] testified he does this work 40 hours per week. Plaintiff testified that his vision is not a problem with sorting the hangers. [Plaintiff] testified the piles of hangers are in front of him on a table and he sits to untangle the hangers that he hangs over on a rack next to his chair. [Plaintiff] testified he earns $20.00 per week for this work activity. [Plaintiff] testified this is like a regular job and that one can be written up for not doing the work tasks. He testified that the group has a quota of pulling apart and sorting hangers for 122 racks per day . . . .

*Id.* at 27.

Then, in his unchallenged credibility assessment, the ALJ found that "[w]hile [Plaintiff] complains of severe problems, it does not seem reasonable to conclude from the minimal findings in evidence that such could be the basis for the degree alleged." *Id.* at 28. He provided specific reasons to support his finding:

> In particular, [Plaintiff] is able to perform work type activities on a full time basis at 40 hours per week: he untangles, sorts, and puts hangers on a rack. [Plaintiff] is independent in his personal hygiene. He is able to shave, bathe, dress, and feed himself without assistance. He is able to perform light household tasks and laundry. He is able to care for family pets. [Plaintiff] is able to prepare daily simple meals. [Plaintiff] does not have a current driver's license due to his history incarceration for DUI, but he is able to leave his home by himself. [Plaintiff] is able to count change, pay bills, and use bank accounts. He is able to shop in stores. [Plaintiff] is able to read magazines and newspapers. He is able to watch television. [Plaintiff] is able to use a telephone.

7

> He is able to attend church services and Sunday school. [Plaintiff] is able to attend twelve-step support groups and classes in parenting and anger management. He is able to attend medical appointments (Exhibits 3E-4E and 21E). These activities are not consistent with the extent of [Plaintiff's] allegedly disabling impairments and draw upon the issue of credibility.

*Id.*

The ALJ also documented the conclusion reached by the State agency consultants—grounded on the consultative examiner's finding that Plaintiff had uncorrected bilateral visual acuity of 20/70—that no visual limitations had been established. *Id.* at 28, 561, 557. He explained that "additional visual limitations have been incorporated into the determination of the [Plaintiff's RFC] in order to be fully consistent with the treating medical records and the overall longitudinal record in its entirety." *Id.* at 28. He concluded that "the evidence of record in its entirety supports the finding that the [Plaintiff] is able to perform a wide range of light work with limited visual acuity as described in the [RFC] above," *id.* at 29, that is, he "cannot read fine print or perform detailed assembly requiring fine finger dexterity." *Id.* at 24.

### b. Review of Plaintiff's specific claims.

Plaintiff submits "[t]he error is that because of the stale nature of the vision records (2006), it should have alerted the ALJ that the vision records needed to be updated through use of a [c]onsultative [e]xam . . . ." Doc. 13, at 4-5. He claims "[i]t is unreasonable and not good judgment to utilize stale

[evidence] to deny a claimant benefits when it is unknown if that [evidence] is still reliable." *Id.* at 12. He argues, "By relying on such stale [evidence] an ALJ's decision is not supported by substantial evidence." *Id.*

But the evidence regarding Plaintiff's vision and supporting the ALJ's decision was not stale. Plaintiff wholly fails to acknowledge and so, to challenge, the State agency consultants' findings that no visual limitations had been established. *See* AR 28, 557, 562. Neither does Plaintiff elect to recognize that the bases of these findings resulted from the testing conducted by the consultative examining physician on November 29, 2011: Plaintiff's uncorrected visual acuity in each eye was 20/70. *See id.* at 26, 518, 561, 562.[2]

Nor was the ALJ obliged, as Plaintiff suggests, Doc. 13, at 5, to categorically credit his testimony that his vision had worsened since a 2006 eye examination. The ALJ found Plaintiff's statements about the intensity and functionally limiting effects of his vision impairment to lack credibility, AR 24-29, and Plaintiff does not challenge that determination here. *See* Doc. 13.

---

[2] Plaintiff states, without support, that "[i]n this case [he] needed a specialist, an Ophthalmologist . . . ." Doc. 13, at 11. Nonetheless, Plaintiff argues on another point involving evidence generated after the hearing decision that he "was legally blind at the time of the hearing because he was determined to be 20/200," *id.* at 14, thus *relying* on the results of visual acuity testing.

Finally, as referenced, *see* n.2, Plaintiff points to evidence generated on August 22, 2014—after the May 6, 2014 entry of the hearing decision—reflecting "he was determined to be 20/200" and so, "was legally blind at the time of the hearing . . . ." *Id*. at 14. His dubious view of the probative reach of the evidence aside, Plaintiff concedes this evidence "was unavailable to the ALJ" but argues—in full—that "the [Appeals Council] should have noticed the error upon receipt of this evidence and remanded the case to the ALJ for further consideration." *Id*. at 15.

To the extent Plaintiff, who appears through counsel, claims error by the Appeals Council, he fails to adequately develop and support any such claim and this report, therefore, does not address it. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (holding that inadequately framed or developed "perfunctory complaints" are insufficient to invoke review).

### 2. Whether the ALJ erred in assessing Plaintiff's RFC and in applying it at step five.

"Based on the testimony of the vocational expert [VE]," the ALJ determined at step five of the sequential analysis that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR 30. Plaintiff challenges that decision with a stream-of-consciousness narrative, claiming at the start, "The ALJ's RFC is not even close to what it should be, but the jobs by the VE do not even

fit the corrupted RFC." Doc. 13, at 15, 15-18. This report, once again, addresses only those specific claims that Plaintiff has arguably framed and supported. *See Murrell*, 43 F.3d at 1389 n.2.

### a. Review of Plaintiff's RFC assessment error claims.

Plaintiff contends "there is nothing in [the RFC] at all for the severe impairments of 'chronic pain to hips and status post hernia repairs.'" Doc. 13, at 15 (quoting AR 23). He suggests the ALJ failed to consider the limitations resulting from these impairments and asks, "How in the world will this man stand all day with bad hips and a hernia? *Id.* At another point in his narrative, he states that "during most of the period in question, [he] had a watermelon-sized hernia between his legs and really bad feet" and asks, "How on earth could a man with such conditions stand and walk . . . almost all day in light work?" *Id.* at 17. He also revisits his stale vision evidence arguments and maintains "the RFC is not premised upon substantial evidence, because it is not just fine print that should have been a limitation in the RFC, his ability to see to even perform work is completely compromised if he is legally blind." *Id.*[3]

---

[3] Plaintiff claims the evidence "from 2006 said **_he could not read at all_** the newspaper, Bible or novels." Doc. 13, at 16. Those records reflect Plaintiff's *statement* in 2006 that "he is no longer able to read standard sized text and cannot read the newspaper, his Bible, or occasional novels." AR 401. And, notably, Plaintiff then testified at his administrative hearing that, at the time

The ALJ accounted for Plaintiff's severe retinal macular dystrophy, chronic hip pain, and status post hernia repair impairments and for his nonsevere foot impairments by restricting him to light work with vision-related limitations. AR 29. He did so based on the record evidence, including the findings by the State agency physicians, *id.* at 28, 554-61, 562, and the findings on physical examination by Dr. Brennan, the consultative examining physician. *Id.* at 26, 28, 29, 518. The ALJ concluded,

> In summary, the evidence shows [Plaintiff's] impairments could preclude him from performing very heavy, heavy, and medium exertional work activity. However, the evidence of record in its entirety supports the finding that [Plaintiff] is able to perform a wide range of light work with limited visual acuity as described in the [RFC] above.

*Id.* at 29. Plaintiff fails to direct the court to any objective or opinion-based evidence allegedly ignored by the ALJ that would support any different or greater limitations. *See* Doc. 13, at 15-17. Instead, he proffers his opinion regarding the efficacy of the limitations imposed by the RFC, and so fails to establish error. *See Howard v. Barnhart*, 379 F.3d 945, 948-49 (10th Cir. 2004) (upholding RFC for light work when claimant cited no medical evidence contradicting it).

---

of the 2006 examination, he "could read with reading glasses [and] could read . . . regular print . . . without very much difficulty." *Id.* at 75.

### b. Review of Plaintiff's vocational evidence claim.

Finally, Plaintiff lists the three jobs identified by the VE in response to the ALJ's inquiry about available work, if any, for an individual who cannot read fine print or perform detailed assembly requiring fine finger dexterity. Doc. 13, at 17-18; AR 30, 69-70. Plaintiff provides the *Dictionary of Occupational Titles* (DOT) codes for the three jobs—Garment Turner, 789.687-074, 1991 WL 681268; Silver Wrapper, 318-687-018, 1991 WL 672757; Counter Clerk, 249-366-010, 1991 WL 672323—and claims that fine fingering dexterity for all three jobs is either occasional or constant and "in violation of RFC for no fine finger dexterity" and for the counter clerk job, adds that "near acuity is frequent in violation of RFC." Doc. 13, at 17-18. He claims "[t]his error cannot be overlooked and the Court should agree remand is indicated because the jobs do not even fit the corrupted hypothetical of the ALJ" and that if the ALJ's hypothetical does not include the precise limitations established by the record, the VE's response to the hypothetical question does not "constitute substantial evidence." *Id.* at 18.

The ALJ found Plaintiff could perform light work but could not read fine print or perform detailed assembly work requiring fine finger assembly. AR 24. Plaintiff has failed in this appeal to establish that the ALJ's RFC does not reflect all limitations supported by the record, and the hearing record shows

the ALJ included these precise limitations in the hypothetical question that prompted the VE to identify the jobs of garment turner, silver wrapper, and counter clerk. *Id.* at 69-70. Plaintiff also misrepresents the DOT's fingering requirements for the three jobs as the finger dexterity requirements for those jobs. Doc. 13, at 17-18. Contrary to Plaintiff's representation, each of the three jobs requires only a "low degree of aptitude ability" for finger dexterity, specifically, the lowest one third, excluding the bottom ten percent. *See* 1991 WL 681268; 1991 WL 672757; 1991 WL 672323. On the near acuity requirement for the counter clerk job, Plaintiff fails to present a supported argument regarding the inability to read fine print and a near acuity requirement or to address the legal import of the two jobs, garment turner and silver wrapper, where acuity is not a factor.

Plaintiff fails to demonstrate reversible error in the ALJ's step five decision.

## III. Recommendation and notice of right to object.

The undersigned recommends the entry of judgment affirming the Commissioner's final decision.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of Court by March 6, 2017, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned

further advises the parties that failure to make a timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 14th day of February, 2017.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE